# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| AMBERLY FORTENBERRY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action Number |
| v. | ) | 5:17-cv-01608-AKK |
| | ) | |
| GEMSTONE FOODS, LLC and | ) | |
| RCF, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Amberly Fortenberry worked for RCF, LLC as a purchasing manager at a plant operated by Gemstone Foods, LLC. Fortenberry asserts that Gemstone and RCF violated the Equal Pay Act, 29 U.S.C. § 206(d), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, when, in contrast to her male counterparts, they refused to pay her for weekend work. Docs. 13; 30. Presently before the court are the defendants' motions for summary judgment. Docs. 31; 34. In a nutshell, Gemstone contends that it is not liable because it was not Fortenberry's employer. Docs. 34; 35. For its part, RCF argues that it paid only production managers for weekend work. Docs. 31; 32; 42. For the reasons explained below, Gemstone's motion, which Fortenberry does not oppose, is due to be granted, and RCF's motion is due to be denied.

I.    STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v.*

*Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. FACTUAL BACKGROUND

RCF hired Fortenberry in January 2015 as a purchasing assistant and promoted her to the purchasing manager position one month later when Gary Hill, the prior purchasing manager, resigned. Docs. 40-1 at 1; 40-2 at 4. RCF, which has a contract to provide employees to Gemstone, assigned Fortenberry to one of Gemstone's poultry processing plants. Docs. 40-1 at 1; 32 at 1. As purchasing manager, Fortenberry received a flat salary. Docs. 40-1 at 1. Her duties included ordering everything, other than poultry, that the plant needed and taking inventory of the plant's supplies. Docs. 40-1 at 1; 40-2 at 11; 40-3 at 91. Although Fortenberry had no duties directly related to the production of poultry, she visited the production area every morning to note the quantities of ice and $CO_2$, and she occasionally delivered supplies, such as gloves or knives, to the production employees. Docs. 40-1 at 1; 40-2 at 14; 40-3 at 91.

According to Fortenberry, her supervisors required her to work on weekends at the end of each month, without any additional pay, to conduct an inventory and also on other weekends when "inventory counts were off . . . ." Docs. 40-1 at 1;

40-2 at 9-10. *See also* doc. 40-3 at 91 (Fortenberry's job description that the purchasing manager "[m]ust be available to perform after hours or weekend work as necessary"). Two and a half years into her employment, Fortenberry learned that RCF paid male managers for hours they worked on weekends. *Id.* The discovery led Fortenberry to ask her direct supervisor, Jordan Scott, for weekend pay. Docs. 40-1 at 1; 40-2 at 6, 35. Scott denied Fortenberry's request and informed her that RCF was phasing out weekend pay. Docs. 40-1 at 1-2; 40-2 at 6, 35. The next day Fortenberry resigned, doc. 40-2 at 7, 36, and subsequently filed a charge of discrimination with the Equal Employment Opportunity Commission for sex discrimination. Doc. 26-2 at 2. This lawsuit followed.

## III. ANALYSIS

The court turns now to the pending motions and notes initially that Fortenberry concedes that summary judgment is due on her claims against Gemstone. Doc. 41. Indeed, because Gemstone never employed Fortenberry, *see* doc. 40-1 at 1, her claims against Gemstone fail as a matter of law, *see* 29 U.S.C. § 206(d); 42 U.S.C § 2000e(2)(a); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) ("[R]elief granted under Title VII is against the *employer* . . . .") (emphasis in original).

As to RCF, Fortenberry asserts a Title VII claim and an Equal Pay Act claim based on her contention that RCF failed to pay her for hours she worked on

4

weekends. Docs. 13; 30.[1] "Title VII and the Equal Pay Act exist side by side in the effort to rid the workforce of gender-based discrimination." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1527 (11th Cir. 1992). Because "[t]he burdens of proof are different under the two laws," *id.* at 1526, the court will address Fortenberry's claims separately.

A. <u>Equal Pay Act</u>

The Equal Pay Act prohibits an employer from paying an employee less than employees of the opposite sex for equal work. 29 U.S.C. § 206(d)(1); *Miranda*, 975 F.2d at 1526. To establish a prima facie case under the Act, a plaintiff "'must show that an employer pays different wages to employees of opposite sexes for equal work on jobs [that] require[] equal skill, effort, and responsibility, and which are performed under similar working conditions.'" *Miranda*, 975 F.2d at 1532 (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195 (1974)). The jobs at issue do not have to be identical, only substantially equal. *Id.* at 1533; 29 C.F.R. § 1620.13(a). Even so, "[t]he standard for determining whether jobs are equal in

---

[1] The Amended Complaint contains allegations regarding two incidents of sexual harassment, doc. 13 at ¶¶ 17-18, and RCF characterizes Fortenberry's Title VII claim as a sexual harassment claim, rather than a gender discrimination claim, docs. 32 at 2, 5-6, 8-12; 42 at 4. But, Fortenberry's Second Amended Complaint flatly contradicts this characterization. *See* doc. 30. Fortenberry identifies her Title VII claim as "Count II—Gender Discrimination," and the claim's sole factual allegation states, "Defendants chose not to pay Plaintiff for her work on weekends performing the duties of purchasing manager in whole or in part because of her gender in violation of Title VII." *Id.* at 1. Thus, Fortenberry does not assert a sexual harassment claim, but instead asserts a Title VII gender discrimination claim. *See id.* As a result, the court does not address RCF's arguments about Fortenberry's purported sexual harassment claim.

terms of skill, effort, and responsibility is high." *Waters v. Turner, Wood & Smith Ins. Agency, Inc.*, 874 F.2d 797, 199 (11th Cir. 1989). *See also Miranda*, 975 F.2d at 1526 ("A plaintiff suing under the Equal Pay Act must meet the fairly strict standard of proving that she performed substantially similar work for less pay."). But, a plaintiff does not have to show discriminatory intent to prove her prima facie case. *Mitchell v. Jefferson Cty. Bd. of Educ.*, 936 F.2d 539, 547 (11th Cir. 1991).

### 1. Whether Fortenberry's job is substantially equal to a production manager's

RCF argues first that it only paid production managers weekend pay and that Fortenberry cannot show that her job as purchasing manager was substantially equal to a production manager's job. Doc. 32 at 8-9. More specifically, RCF asserts that it had a policy or practice to pay salaried managers who worked on production, quality assurance, and shipping for weekend work. Docs. 31-2 at 2; 40-3 at 24; 40-4 at 4. Recognizing that job titles are not determinative of whether the managers' jobs are substantially equal and that the court must look to the jobs' actual requirements and duties, *see Waters*, 794 F.3d at 199 (citation omitted); 29 C.F.R. § 1620.13(e), RCF argues that, unlike a production manager, Fortenberry did not have to work in the production area when employees were processing chickens, that Fortenberry only sporadically visited the production area during production times, never worked on weekends during production times, and never

worked on the cutting room floor. Docs. 32 at 8-9; 31-2 at 2. These contentions are directly contracted by Fortenberry who contends that she worked in the active production area each morning to check ice and $CO_2$ supplies for the plant, occasionally visited the active production area to deliver knives and gloves, and worked on weekends when production was running. Docs. 40-1 at 1; 40-2 at 14. Moreover, RCF admits that, like Fortenberry, production managers had a desk and computer in an office at Gemstone where they spent time doing administrative work, and that production managers spent only "minimal" time using production equipment, such as knives and saws. Docs. 32 at 3; 31-2 at 2; 40-3 at 12-13, 17. In other words, viewing the evidence in the light most favorable to Fortenberry, as the court must at this stage, Fortenberry has established the necessary substantial similarities in the two positions to make a prima facie case.

2. <u>Whether factors other than sex are responsible for the pay differential</u>

Even after Fortenberry establishes a prima facie case, RCF may still prevail by showing that the pay differential is justified by one of the statutory defenses.[2] In this case, RCF raises only the defense that factors other than sex motivated the pay difference. *See* doc. 32. RCF "bears the burden of proof on [this] affirmative defense[]." *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995). RCF's burden is a

---

[2] The defenses are "(i) a seniority system; (ii) a merit system; (iii) a system which measures earning by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

"heavy one"—it must show that gender played no role in the pay differential, *Irby*, 44 F.3d at 954 (quoting *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 590 (11th Cir. 1994)), and that "none of the decision-makers . . . were influenced by gender bias," *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1078 (11th Cir. 2003) (citing *Anderson v. WBMG-42*, 253 F.3d 561, 566 (11th Cir. 2001)). If RCF meets its burden, then Fortenberry must offer affirmative evidence that RCF's explanation is "pretextual or offered as a post-event justification for a gender-based differential." *Irby*, 44 F.3d at 954 (citing *Schwartz v. Florida Bd. of Regents*, 954 F.2d 620, 623 (11th Cir. 1991) (per curiam)).

RCF justifies the pay differential in this case by pointing to its policy of paying only production managers for weekend pay and asserting that it did not pay Fortenberry for weekend pay because her job was not "pertinent to the [plant's] production needs." *See* docs. 32 at 2-4; 40-3 at 24.[3] Fortenberry argues that RCF's weekend pay policy is pretext for a gender-based differential. Doc. 39 at 13-16. To support her argument, she first points out that no one at RCF informed her about this purported policy, doc. 40-1 at 2, that when she asked for weekend pay, RCF initially told her that it was phasing out such pay, *id.* at 13; doc. 40-2 at

---

[3] RCF also attempts to justify the pay differential by asserting that production managers are required to work on weekends, while non-production managers generally only worked on weekends "to catch up in the event that [they] had fallen behind during the week." Docs. 32 at 3; 31-2 at 2. This justification is belied by Fortenberry's testimony that her supervisors required her to work on weekends and by evidence that RCF required Fortenberry to work after hours when production was not running. Docs. 31-2 at 2; 40-1 at 1; 40-2 at 9-10; 40-3 at 91.

8

35, and that it only asserted the production distinction in this litigation. Indeed, in the absence of a reasonable explanation, as is the case here, an employer's shifting explanation for a challenged action may be evidence of pretext. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1195 (11th Cir. 2004) (finding that an employer's "shifting reasons" for an employee's termination allowed the jury to discredit the employer's explanation and infer that discrimination was the real reason for the termination).

Fortenberry next offers evidence of RCF's inconsistent application of its weekend pay policy to support her argument that the policy is a post-hoc justification for gender-based discrimination. *See* docs. 39 at 16-18. Specifically, Fortenberry notes that RCF paid Ron Dotson, a maintenance manager, weekend pay, doc. 40-2 at 13, that RCF's corporate representative denied in a deposition that RCF paid Dotson weekend pay, contending that Dotson's position was not essential to production or shipment, doc. 40-3 at 14, and that, subsequent to that testimony, RCF has classified Dotson as a production manager and admitted that it paid him weekend pay, docs. 31-2 at 1; 42-1 at 2. Fortenberry notes also that RCF paid Hill, her predecessor as purchasing manager, weekend pay. Docs. 31-1 at 1; 40-2 at 4.[4] Finally, RCF also denied Sandra Herrera, a female human resources

---

[4] RCF asserts that Hill had more responsibilities than Fortenberry. Doc. 31-2 at 3. But, none of Hill's responsibilities included production, maintenance, or shipping, and RCF does not contend that Hill was a production manager. *See id.* Also, RCF's statutory manager, Ben

9

manager, weekend pay for hours she worked at job fairs, and only paid her after she complained. Docs. 31-2 at 2-3; 40-2 at 13; 40-3 at 16, 26.

Viewing this evidence in the light most favorable to Fortenberry, a reasonable jury could find that RCF's inconsistent application of its weekend pay policy and its shifting reasons for why it did not pay Fortenberry for weekend work show that RCF's policy is pretext for a gender-based reason for the pay differential. *See Cleveland*, 369 F.3d at 1195; *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 644 (11th Cir. 1998) (finding that the inconsistent application of a policy regarding posting job vacancies could be evidence of discrimination). As a result, RCF's motion on Fortenberry's Equal Pay Act claim is due to be denied.

B. Title VII Claim

The *McDonnell Douglas* burden-shifting framework applies to Title VII claims for gender-based wage discrimination based on circumstantial evidence. *Miranda*, 975 F.2d at 1528 (citation omitted). Under this familiar framework, the plaintiff bears the initial burden of proving a prima facie case of discrimination by

---

Turnage, asserts that he never authorized RCF to pay non-production managers for weekend work, and he only learned that RCF gave Hill weekend pay after Hill's resignation. Doc. 31-1 at 1. Turnage's discovery led him to phase the practice out, and RCF began telling salaried non-production mangers hired after February 2015 that they would not receive weekend pay. Doc. 31-1 at 1-2. Whether this contention explains why Fortenberry did not receive weekend pay, or whether it is because Hill performed additional duties, as RCF also contends, is for the trier of fact to determine.

showing (1) she belongs to a protected class, (2) she was qualified for the job, (3) she was subject to an adverse employment action, and (4) her employer treated similarly-situated employees outside her protected class more favorably. *E.g., Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). "The standard for 'similarity' in Title VII cases is relaxed" compared to the Equal Pay Act. *Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 598 (11th Cir. 1994) (citing *Miranda*, 975 F.2d at 1526).

In this case, Fortenberry is a member of a protected class, and RCF does not dispute that she was qualified for the purchasing manager position. *See* doc. 32. Also, by denying her request for weekend pay, RCF subjected Fortenberry to an adverse employment action. *See* doc. 40-2 at 35. In addition, there is at least a question of material fact regarding if RCF treated similarly-situated males more favorably by paying them for hours they worked on weekends, *see* pp. 6-7, *supra*, including Fortenberry's predecessor who, like Fortenberry, was a non-production manager, doc. 40-2 at 4. Whether that male employee performed additional duties that warranted the pay or received the pay in error is a matter for the jury to decide. At this juncture, this evidence is sufficient to support Fortenberry's prima facie case.

If Fortenberry meets her initial burden of proving a prima facie case, "[t]he burden then shifts to [RCF] to 'articulate some legitimate nondiscriminatory

reason' for the alleged discrimination." *Miranda*, 975 F.2d at 1528 (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)). If RCF meets this "exceedingly light" burden, then Fortenberry must prove that RCF's proffered reason is pretext for unlawful discrimination. *Id.* The affirmative defenses that apply to the Equal Pay Act also apply to a Title VII claim based on disparate pay. 42 U.S.C. § 2000e-2(h); *Washington County v. Gunther*, 452 U.S. 161, 167 (1981); *Miranda*, 975 F.2d at 1528. As discussed above, Fortenberry introduced evidence to create a question of fact regarding if RCF's proffered reason for not paying her for weekend work is pretext for gender discrimination. *See* pp. 8-10, *supra*. Consequently, RCF's motion on the Title VII claim also fails.

## IV. CONCLUSION AND ORDER

Gemstone Foods, LLC's motion for summary judgment, doc. 34, is **GRANTED**, and Fortenberry's claims against Gemstone are **DISMISSED WITH PREJUDICE**. RCF's motion for summary judgment, doc. 31, is **DENIED**, and Fortenberry's claims against RCF will proceed to a jury trial set for January 28, 2019. The final pre-trial conference of this matter is **RESET** to **December 19, 2018 at 9:00 a.m.**, at the United States Courthouse at 101 Holmes Avenue Northeast, Huntsville, Alabama 35801. The court directs Fortenberry and RCF to the Standard Pretrial Procedures governing all pretrial deadlines, which is attached as **Exhibit A**.

**DONE** the 21st day of November, 2018.

                                                  _____
                                                      **ABDUL K. KALLON**
                                           UNITED STATES DISTRICT JUDGE

# **EXHIBIT A**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

PRE-TRIAL DOCKET
HON. ABDUL K. KALLON, PRESIDING

# **HUNTSVILLE, ALABAMA**

This case is set for a pre-trial hearing pursuant to Rule 16 of the Federal Rules of Civil Procedure. A conference-type hearing will be held in chambers in the United States Courthouse in Huntsville, Alabama at the time indicated.

The hearing will address all matters provided in Rule 16, including the limitation of issues requiring trial, rulings on pleading motions, and settlement possibilities.

Counsel attending the conference are expected to be well-informed about the factual and legal issues of the case, and to have authority to enter appropriate stipulations and participate in settlement discussions. <u>Counsel appearing at the conference will be required to proceed at trial notwithstanding the naming of others as designated trial counsel</u>.

Promptly upon receipt of this notice, plaintiff's counsel is to initiate discussions with other counsel aimed at ascertaining which basic facts are not in dispute, at clarifying the parties' contentions (for example, just what is denied under a "general denial") and at negotiating workable procedures and deadlines for remaining discovery matters. <u>At least four (4) business days in advance of the conference, plaintiff's counsel is to submit to chambers (via email at kallon_chambers@alnd.uscourts.gov) a proposed Pre-trial Order in WordPerfect format</u>, furnishing other counsel with a copy. It is anticipated that in most cases the proposed order, with only minor insertions and changes, could be adopted by the court and signed at the close of the hearing.

A sample of a proposed Pre-trial Order is available on the Chamber web site (http://www.alnd.uscourts.gov/content/judge-abdul-k-kallon) to illustrate the format preferred by the court and also to provide additional guidance and instructions. Each order must, of course, be tailored to fit the circumstances of the individual case.

Counsel drafting this proposed order should consider the utility this document will provide for the litigants, the jury, and the court alike. The court anticipates using the pretrial order to (1) identify and narrow the legal and factual issues remaining for trial, and (2) provide jurors with the legal and factual context of the dispute. This order should **not** revisit at length arguments made in previous filings with the court, nor should it serve as another venue for adversarial posturing. Pretrial orders should be simple, short, and informative.

IN ANY CASE WHERE COUNSEL HAVE ANNOUNCED SETTLEMENT TO THE COURT, A CONSENT JUDGMENT IN SATISFACTORY FORM <u>MUST</u> BE PRESENTED TO THE COURT <u>PRIOR</u> TO THE SCHEDULED TRIAL DATE; OTHERWISE, THE CASE WILL BE DISMISSED <u>WITH</u> PREJUDICE.